# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL CASE NO. 3:20-cv-00453-MR

| | |
|---|---|
| **RAMON GIVENS,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **J.C. MOORE, et al.,**[2] ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Motions for Summary

Judgment filed by Defendants Phillip Banham, Jerry Burch, Jarrid Moore,

and Jeffrey Zederbaum's [Doc. 57] and the Plaintiff [Doc. 69].  Also pending

is the Plaintiff's Motion to Extend Time of Dispositive Motions [Doc. 60].

## I.    BACKGROUND

The incarcerated Plaintiff Ramon Givens, proceeding pro se, filed this

action pursuant to 42 U.S.C. § 1983 addressing the circumstances

_____

[1] According to the North Carolina Department of Public Safety's website, the Plaintiff's first name is "Ramone." See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0604055&searchOffenderId=0604055&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed Sept. 2, 2022); Fed. R. Evid. 201.

[2] The Defendants are identified in the Complaint as "J.C. Moore" and "John Doe" #1, 2, and 3.  [Doc. 1 at 1].  The Clerk will be instructed to correct their names in accordance with the Defendants' summary judgment materials.

surrounding his August 2017 traffic stop and arrest. The unverified Complaint [Doc. 1], Amended Complaint [Doc. 22], and Second Amended Complaint [Doc. 31] passed initial review on claims that Defendants Banhan, Burch, Moore, and Zederbaum used excessive force and/or failed to intervene during his arrest. [Docs. 10, 25, 41].

The parties timely filed cross-Motion for Summary Judgment.[3] [Docs. 57, 59]. The Court entered an Order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the Defendants' summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 61: <u>Roseboro</u> Order]. The parties have filed Responses to the Motions for Summary Judgment [Doc. 63: Defendants' MSJ Response; Doc. 66: Plaintiff's MSJ Response], and Replies [Doc. 69: Defendants' MSJ Reply; Doc. 70: Plaintiff's MSJ Reply]. Having been fully briefed, this matter is ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[3] Because the Plaintiff filed his Motion for Summary Judgment before the deadline for filing dispositive motions expired [<u>see</u> Doc. 43], his Motion seeking an extension of time is denied as moot.

judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the

3

nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. <u>Kennedy v. Joy Technologies, Inc.</u>, 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version

4

of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III.  FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

At around midnight on August 9, 2017, Officer Zederbaum advised other officers that the Plaintiff had conducted an apparent hand-to-hand drug transaction from a white motor vehicle in a restaurant parking lot.  [Doc. 57-4: MSJ Ex. at 24 (Zederbaum Stmt)].  Officer Moore stopped the vehicle for a license plate violation a short time later; Tjada Cherry was the driver, the Plaintiff was the front seat passenger, and Daisha Leggett was in the back seat.  [Doc. 57-4: MSJ Ex. at 21 (Moore Stmt)].  Moore approached the vehicle's driver side and asked Cherry for her license and registration.  [Id.]. The Plaintiff was digging into his left pants pocket and said he was looking for his identification.  [Id.].  Moore asked the Plaintiff to take his hand out of his pocket; the Plaintiff did so and patted the outside of his pocket.  [Id.]. Officers Burch and Banham approached the vehicle's passenger side and saw the Plaintiff try to put the vehicle in "drive" by grabbing the gear shift

5

knob.[4]  [Id.; Doc. 57-4: MSJ Ex. at 15 (Burch Stmt)].  Burch confronted the Plaintiff verbally and commanded that the Plaintiff exit the vehicle.  [Doc. 57-4: MSJ Ex. at 15 (Burch Stmt)].  Moore simultaneously told Burch and Banham to remove the Plaintiff from the vehicle.  [Doc. 57-4: MSJ Ex. at 21 (Moore Stmt)].  Burch attempted to open the passenger side door, but the Plaintiff locked the door using his left hand and again reached for the gear shift.  [Doc. 57-4: MSJ Ex. at 15 (Burch Stmt); Doc. 57-4: MSJ Ex at 19 (Banham Stmt)].  Burch attempted to pull the Plaintiff's arm out of the window and prevent him from placing the car in drive.  [Doc. 57-4: MSJ Ex at 15 (Burch Stmt); Doc. 57-4: MSJ Ex. at 19 (Banham Stmt)].  The Plaintiff pulled away and began reaching under the front of his seat with his left hand.  [Doc. 57-4: MSJ Ex. at 15 (Burch Stmt)].  Burch announced that the Plaintiff was reaching, attempted to regain control of the Plaintiff's left arm, and gave loud verbal commands to stop resisting.  [Id.].  Burch regained control of Plaintiff's left arm while Officer Banham gained control of the Plaintiff's right arm and maintained control of the Plaintiff's head.  [Id.; Doc. 57-4: MSJ Ex. at 19 (Banham Stmt)].  The Plaintiff continued to pull away from the officers'

---

[4] The Plaintiff later told officers on that he was trying to jam the gear shift into "park" so that the vehicle would not roll.  [See BWC footage discussed *infra*].

grasps, failed to comply with their commands, and attempted to reach under his seat. [Doc. 57-4: MSJ Ex. at 16 (Burch Stmt)].

Moore asked Cherry to step out of the car, radioed for assistance, and tried to restrain the Plaintiff's arm from the driver's side of the vehicle. [Doc. 57-4: MSJ Ex. at 21 (Moore Stmt)]. Every time the Plaintiff would get his hand free from Burch and Banham's grasp, the Plaintiff would attempt to bring his hand up to his mouth. [Id.; Doc. 57-4: MSJ Ex. at 19 (Banham Stmt)]. Burch attempted to use a pressure point on the bridge of the Plaintiff's nose and Banham attempted to use pressure at the Plaintiff's mandibular notch, both of which were ineffective. [Doc. 57-4: MSJ Ex. at 16 (Burch Stmt); Doc. 57-4: MSJ Ex. at 19 (Banham Stmt)]. According to Moore and Banham, they attempted to control the Plaintiff's head so that he could not bite officers or ingest narcotics. [Doc. 57-4: MSJ Ex. at 22 (Moore Stmt); Doc. 57-4: MSJ Ex. at 19 (Banham Stmt)]. According to the Plaintiff, he was "choked" by officers. [Doc. 32: Plaintiff's Decl at 3; Doc. 74: Plaintiff's Decl at 1-2].

Officers opened the passenger side door and were still unable to remove the Plaintiff from the vehicle, so Moore told Burch to use his pepper spray on the Plaintiff. [Doc. 57-4: MSJ Ex. at 22 (Moore Stmt); Doc. 57-4: MSJ Ex. at 16 (Burch Stmt); Doc. 57-4: MSJ Ex. at 19 (Banham Stmt)].

Burch gave a final warning for the Plaintiff to exit the vehicle or he would be pepper sprayed, then applied a two-second stream directly above the Plaintiff's eyebrows. [Doc. 57-4: MSJ Ex. at 16 (Burch Stmt); Doc. 57-4: MSJ Ex. at 19 (Banham Stmt)]. Moore released the Plaintiff's left hand, and Burch and Banham removed the Plaintiff through the passenger door. [Doc. 57-4: MSJ Ex. at 22 (Moore Stmt); Doc. 57-4: MSJ Ex. at 16 (Burch Stmt)].

Moore exited the driver side and stepped around the vehicle, where Burch and Banham were struggling with the Plaintiff on the ground. [Doc. 57-4: MSJ Ex. at 22 (Moore Stmt); Doc. 57-4: MSJ Ex. at 16 (Burch Stmt); Doc. 57-4: MSJ Ex. at 19 (Banham Stmt)]. Moore unsuccessfully tried to get the Plaintiff's arm out from underneath the Plaintiff's body. [Doc. 57-4: MSJ Ex. at 22 (Moore Stmt)]. Moore then gave a loud verbal command to stop resisting and struck the upper part of Plaintiff's left arm with his knee; this was ineffective. [Doc. 57-4: MSJ Ex. at 22 (Moore Stmt)]. Additional officers began to arrive, so Moore disengaged to wash the pepper spray off of himself. [Id.].

Officer Zederbaum arrived to see Officers Burch and Banham on the ground wrestling with the Plaintiff, giving him loud verbal commands to stop resisting and to place his hands behind his back. [Doc. 57-4: MSJ Ex. at 26 (Zederbaum Stmt)]. Zederbaum ran to the scene and attempted to help;

however, his momentum forced the Plaintiff to roll on top of Officer Burch. [Id.]. The Plaintiff continued to actively resist and pulled his left arm away and under his chest with his hand balled into a fist. [Id.]. In Zederbaum's experience, a balled fist means that a subject may be preparing to strike officers. [Id.]. It was concerning to Zederbaum that the Plaintiff was reaching under his body because drug dealers often carry firearms in their waistbands. [Id.]. Zederbaum loudly commanded "if you don't stop, I'm going to throw punches." [Id.].

According to Burch, the Plaintiff placed his hands on Burch's duty belt, and Burch verbalized this to the other officers. [Doc. 57-4: MSJ Ex. at 16-17 (Burch Stmt); Doc. 57-4: MSJ Ex. at 26 (Zederbaum Stmt)]. This was a safety risk because an officer's duty belt holds weapons. [Doc. 57-4: MSJ Ex. at 26 (Zederbaum Stmt)]. Zederbaum delivered two strikes to the right side of Plaintiff's back and loudly commanded "stop grabbing his belt, stop grabbing him," and officers were finally able to handcuff him. [Id.].

According to the Plaintiff, the officers are being "dishonest" by saying that he grabbed an officer's duty belt; the reasons the officers gave for hitting him are "untrue;" and he was punched in the face before and after being detained. [Doc. 67: Plaintiff's Decl. at 9; Doc. 74: Plaintiff's Decl at 1-2; see

9

Doc. 59: Plaintiff's MSJ at 3 (Defendants "used extreme excessive use of force, while punching, choking, etc. after being restrained and arrested….")].

After the Plaintiff was secured, officers found a small plastic box on the ground next to the Plaintiff that contained crack cocaine. [Doc. 57-4: MSJ Ex. at 27 (Zederbaum Stmt); Doc. 57-4: MSJ Ex. at 20 (Banham Stmt)]. A search of Plaintiff's person revealed $1,262.25 in cash, approximately 2.5 grams of marijuana, and a digital scale. [Doc. 57-4: MSJ Ex. at 27 (Zederbaum Stmt)].

The Plaintiff was treated by medics, and saline was poured over his eyes to clear the pepper spray. [Doc. 57-4: MSJ Ex. at 27 (Zederbaum Stmt); Doc. 57-4: MSJ Ex. at 20 (Banham Stmt)]. When the Plaintiff was finally stood up, Banham noticed that the Plaintiff's hands were clenched behind his back. [Doc. 57-4: MSJ Ex. at 27 (Zederbaum Stmt); Doc. 57-4: MSJ Ex. at 20 (Banham Stmt)]. Bahnam gave loud commands for the Plaintiff to open his hands, and retrieved a bag of crack cocaine from the Plaintiff's left hand. [Doc. 57-4: MSJ Ex. at 27 (Zederbaum Stmt); Doc. 57-4: MSJ Ex. at 20 (Banham Stmt)]. The Plaintiff was charged *inter alia* with possession with intent to sell/deliver cocaine and possession of marijuana. [Doc. 57-3: MSJ Ex. at 11 (Incident Report)].

According to the Defendants, the Plaintiff asked to be transported to the hospital. [Doc. 57-4: MSJ Ex. at 27 (Zederbaum Stmt)]. According to the Plaintiff, "paramedics took him off on a stretcher due to injuries and [he] was sent to (CMC) Carolina Medical Center for neck, back, and spinal injury." [Doc. 59: Plaintiff's MSJ at 3].

Zederbaum read the Plaintiff his <u>Miranda</u> rights in the ambulance on the way to the hospital. [Doc. 57-4: MSJ Ex. at 27 (Zederbaum Stmt)]. The Plaintiff said that he was at a Cook Out restaurant selling illegal narcotics, that he was recently laid off from his job, and that he sold crack to survive. [<u>Id.</u>].

According to the Plaintiff, he sustained neck, back, and spinal injuries during his arrest. [Doc. 32: Plaintiff's Decl at 3; Doc. 74: Plaintiff's Decl at 1-2; Doc. 59: Plaintiff's MSJ at 3]. The Plaintiff has submitted evidence including ambulance, hospital, and radiology bills, and a "mugshot" of himself wearing a neck brace. [Doc. 32-2: Plaintiff's Ex at 1-3; Doc. 72: Plaintiff's Medical Records at 2-3].

Medical records show that the Plaintiff was seen at the hospital later that night for the chief complaints of "burning to his eyes after being pepper sprayed, neck and back pain after being arrested." [Doc. 57-6: MSJ Ex. at 1 (ED Physician Preliminary Report)]. The doctor noted no skin discoloration;

described the Plaintiff's head as "atraumatic"; and found normal alignment and no tenderness to his back. [Doc. 57-6: MSJ Ex. at 1]. The doctor placed the Plaintiff in a C-collar and ordered a CT scan of his cervical spine due to "cervical spinal tenderness on palpation," although "[n]o acute findings on CT of cervical spine" were found. [Doc. 57-6: MSJ Ex. at 2 (ED Physician Preliminary Report)]. The Plaintiff received a cervical CT scan, which found "alignment of the cervical vertebra is within normal limits" and "[n]o evidence of acute cervical spine fracture." [Doc. 57-6: MSJ Ex. at 3 (CT Spine Final Report)]. Photographs of the Plaintiff that were taken at the hospital show no visible signs of injury to the Plaintiff's face, neck, or arms. [Doc. 57-5: MSJ Ex. at 1-5].

The Defendants have submitted video files containing footage from the body worn cameras ("BWC") worn by officers including Moore, Burch, Banham, Zederbaum at the time of the incidents in question. The footage of the incident shows the following events:[5]

---

[5] Each BWC video includes a reading at the top of the screen for the time. Some of the BWCs' times appear to be off by several seconds. In the event of timing inconsistencies among BWCs, the Court has listed the time counter from the lowest BWC exhibit number that captures the same event. The Plaintiff asserts that the timeframes were edited and that BWC deactivation is evidence of a cover-up. [Doc. 67: Plaintiff's Decl at 3]. The Defendants assert that Moore, Burch, and Banham's BWCs were accidentally knocked off, and that Zederbaum's BWC was accidentally deactivated, during the struggle with Plaintiff. [See Doc. 57-4: MSJ Ex. at 3-7 (Supervisor Synopsis)].

12

04:01:33          Moore conducts a traffic stop [Ex. 5 at 0:44]

04:01:51          Moore approaches the driver side, asks the driver for
                  license and registration [Ex. 5 at 1:03]

04:02:17          Moore directs Plaintiff to take his hand out of his pocket;
                  Plaintiff says he is "looking for [his] ID" [Ex. 5 at 1:28]

04:02:18          Burch and Banham approach the vehicle's passenger side
                  [Ex. 5 at 1:30; Ex. 6 at 0:50]

04:02:28          Burch says "sir, what are you trying to do right now" [Ex. 5
                  at 1:38; Ex. 6 at 0:56; Ex. 7 at 0:58]

04:02:29          Burch orders "get out of the car" and attempts to open the
                  passenger door; Plaintiff yells "I'm not trying to do nothing"
                  and reaches toward the door lock; Burch reaches into the
                  passenger window; Plaintiff grabs and slaps at Burch [Ex.
                  5 at 1:41; Ex. 6 at 1:02; Ex. 7 at 1:00]

04:02:31          Banham reaches into the passenger window; Plaintiff
                  struggles [Ex. 7 at 1:01]

04:02:35          Moore directs the driver out of the car; she complies [Ex. 5
                  at 1:46]

04:02:38          Officer commands "give me your hands" repeatedly and
                  says "he's reaching;" Plaintiff continues to struggle; Burch's

13

|          |                                                                                      |
|----------|--------------------------------------------------------------------------------------|
|          | BWC is knocked free and continues recording audio [Ex. 7 at 1:01; Ex. 6 at 1:07 (audio)] |
| 04:02:41 | Banham reaches towards Plaintiff's head and neck, pushes Plaintiff's head to the headrest [Ex. 7 at 1:11] |
| 04:02:56 | Burch orders Plaintiff to keep his hands on the roof repeatedly; Plaintiff continues to struggle [Ex. 7 at 1:26] |
| 04:02:59 | Moore calls for assistance over the radio [Ex. 5 at 2:10] |
| 04:03:03 | Banham holds Plaintiff's head against the headrest; officer tells Plaintiff to "relax" repeatedly [Ex. 7 at 1:33] |
| 04:03:12 | Officers attempt to control Plaintiff's left arm; Plaintiff continues to struggle [Ex. 7 at 1:43] |
| 04:03:06 | Plaintiff reaches to his pants pocket [Ex. 5 at 2:17] |
| 04:03:15 | Plaintiff reaches to his pants pocket [Ex. 5 at 2:26] |
| 04:03:18 | Moore enters the vehicle's driver side; his BWC is knocked free and continues recording audio [Ex. 5 at 2:29] |
| 04:03:24 | Officers open the passenger door and attempt to extract Plaintiff [Ex. 7 at 1:54] |
| 04:03:47 | Plaintiff says "Stop hurting me, man" repeatedly [Ex. 7 at 2:15; Ex. 5 at 3:00 (audio);  Ex 6. at 2:20 (audio)] |

14

| 04:03:55 | Officers say "Stop resisting" repeatedly and attempt to remove Plaintiff through the passenger door [Ex. 7 2:24; Ex. 5 at 3:06 (audio); Ex. 6 at 2:25 (audio)] |
| --- | --- |
| 04:04:12 | Officers say "get out of the car" repeatedly; "we've got pepper spray;" and "just spray him" [Ex. 7 at 2:41; Ex. 5 at 3:24 (audio); Ex. 6 at 2:41 (audio)] |
| 04:04:25 | Banham's BWC falls off as Plaintiff is removed from the car through the passenger door; audible struggle [Ex. 7 at 2:56] |
| 04:04:37 | Zederbaum approaches while three officers struggle with Plaintiff on the grass beside the car; officer says "stop, stop resisting" [Ex. 9 at 0:00; Ex. 5 at 3:48 (audio); Ex. 6 at 3:06 (audio); Ex. 7 at 3:05 (audio)] |
| 04:04:42 | Officers say "if you don't stop we're going to start throwing punches" and "give me your hands;" Plaintiff continues to struggle; two audible strikes [Ex. 9 at 0:07; Ex. 5 at 3:53 (audio); Ex. 6 at 3:11 (audio); Ex. 7 at 3:11 (audio)] |
| 04:04:48 | Officer says "stop grabbing his belt, stop grabbing him" [Ex. 9 at 0:16; Ex. 5 at 4:00 (audio); Ex. 6 at 3:18 (audio); Ex. 7 at 3:17 (audio)] |

15

| | |
|---|---|
| 04:04:58 | Officers say "give me your hands" repeatedly; struggle in the grass continues [Ex. 11 at 1:03; Ex. 5 at 4:10 (audio); Ex. 6 at 3:27 (audio); Ex. 7 at 3:27 (audio)] |
| 04:05:22 | Plaintiff says "I can't breathe;" officers say "stop resisting" and attempt to handcuff Plaintiff; Plaintiff continues struggling [Ex. 8 at 1:27; Ex. 11 at 1:27] |
| 04:05:52 | Plaintiff is handcuffed [Ex. 8 at 1:57] |
| 04:05:57 | Officers find a small box in the grass next to Plaintiff [Ex. 8 at 2:02; Ex. 10 at 2:32; Ex. 11 at 2:02] |
| 04:06:04 | Plaintiff says "I can't breathe" repeatedly; officers roll Plaintiff onto his side [Ex. 11 at 2:09] |
| 04:06:17 | Officer calls for saline [Ex. 11 at 2:22] |
| 04:07:01 | Burch's BWC is reattached [Ex. 6 at 5:30] |
| 04:07:11 | Moore's BWC is reattached [Ex. 5 at 6:21] |
| 04:06:27 | Banham's BWC is reattached [Ex. 7 at 4:57] |
| 04:07:00 | Plaintiff says he "can't breathe" and is "hurting" [Ex. 11 at 3:06] |
| 04:07:54 | Banham offers to pour saline on Plaintiff's face; Plaintiff agrees [Ex. 7 at 6:25] |
| 04:08:35 | Cash is removed from Plaintiff's pocket [Ex. 15 at 0:40] |

16

| | |
|---|---|
| 04:09:26 | Plaintiff is offered more saline; he agrees [Ex. 11 at 5:31] |
| 04:09:41 | Medics arrive [Ex. 7 at 8:11] |
| 04:15:42 | More cash is removed from Plaintiff's pocket [Ex. 14 at 3:17] |
| 04:17:02 | Plaintiff says he tried to jam the car into park and that an officer reached into the car, trying to grab him [Ex. 14 at 5:38] |
| 04:18:10 | Medic asks the Plaintiff if he needs an ambulance and Plaintiff says "yes" [Ex. 14 at 5:46] |
| 04:18:32 | Medic asks the Plaintiff if he is able to walk and Plaintiff says "yes" [Ex. 14 at 6:08] |
| 04:19:02 | Plaintiff is brought to his feet; officers order Plaintiff to "open your hands" repeatedly; officers recover a small baggie of white substance [Ex. 10 at 15:36; Ex. 12 at 0:22; Ex. 14 at 6:33] |
| 04:20:41 | Plaintiff walks to the ambulance and climbs inside [Ex. 12 at 1:56; Ex. 14 at 8:07] |

Footage from Officer Zederbaum's discussion with the Plaintiff in the ambulance immediately after the incident shows the following events:

| | |
|---|---|
| 04:22:36 | Zederbaum provides Miranda warnings [Ex. 12 at 3:51] |

17

| 04:23:22 | Plaintiff admits he met someone at a restaurant for an "illegal sale" before he was pulled over [Ex. 12 at 4:38] |
|---|---|
| 04:23:40 | Zederbaum asks "what was going on with the car;" Plaintiff says his girl's car is "f---ed up," so that when she put it in stop it will "keep rolling" unless you "jam it up into park" [Ex. 12 at 4:56] |
| 04:27:52 | Plaintiff says he was selling crack because he got laid off from his job [Ex. 12 at 9:08] |

Sergeant Wheaton[6] interviewed the white vehicle's driver, Tjada Cherry, and the backseat passenger, Daisha Leggett, immediately after the incident regarding the use of force. Footage from Sergeant Wheaton's BWC shows the following events:

| 04:12:05 | Leggett says that the officer on the driver's side asked Plaintiff why he kept going in his pockets; other officers came and she thinks they told Plaintiff to stop going in his pockets; the officers on the passenger side grabbed Plaintiff by his neck then they said they are going to pepper spray him [Ex. 10 at 8:39] |
|---|---|

---

[6] Sergeant Wheaton is not a Defendant in this case.

04:15:14          Cherry says that the officer who pulled them over asked for

                  ID and told Plaintiff to be still but he would not stop digging

                  in his pockets so officers grabbed him and got him out of

                  the car [Ex. 10 at 11:48]

## IV.    DISCUSSION

### A.    Defendants' Motion for Summary Judgment

#### 1.    Excessive Force

The Fourth Amendment prohibits police officers from using force that is "excessive" or not "reasonable" in the course of making an arrest.  Graham v. Connor, 490 U.S. 386, 388 (1989); Meyers v. Baltimore Cnty., Md., 713 F.3d 723 (4th Cir. 2013).  Whether an officer has used excessive force to effect an arrest is based on "objective reasonableness," taking into account "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight."  Graham, 490 U.S. at 396, 399.  An officer is "authorized to take such steps as [are] reasonably necessary to protect [his] personal safety and to maintain the status quo during the course of the stop."  United States v. Hensley, 469 U.S. 221, 235 (1985).

19

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204.

The Plaintiff alleges that he "went in [his] pocket to retrieve identification" during the traffic stop and "was abruptly grabbed, dragged from the vehicle, maced, beaten, and choked by officers," even though he said repeatedly that he "couldn't breathe" and asked officers not to kill him. [Doc. 31 at 6, 13]. He claims that he was "put on a stretcher by EMS (medics) and rushed to Carolina Medical Center (CMC) Hospital for serious neck, back, and spine injuries," and that he still suffers "severe pains" from the incident. [Id.].

The Plaintiff's allegations that any Defendant used excessive force or failed to intervene are conclusively refuted by the forecast of objective evidence. Videos of these events demonstrate that the Plaintiff reached for

the gear shift knob during a traffic stop; repeatedly ignored officers' verbal commands; actively resisted officers' attempts to remove him from the vehicle and to physically restrain him; was pepper sprayed after three officers had physically struggled with him for nearly two minutes and issued repeated verbal commands; continued to physically resist officers after being pepper sprayed; received two strikes to his back and one strike to his arm when officers were unable to restrain his movements; and only stopped physically resisting after numerous officers forcibly restrained his arms and legs. Moreover, the objective evidence reveals that the Plaintiff did not receive serious injuries in the incident that required treatment. The Plaintiff was able to walk to the ambulance after the incident and he was taken to the hospital at his own request. He was given a cervical collar and a CT scan because of "tenderness," although no other injuries were noted. Photographs taken shortly after the incident and the medical records reveal that the Plaintiff had no skin discoloration, bruises, scrapes, or other visible signs of being punched in the face or choked, and no signs of trauma to his head or neck other than the reported tenderness.

The Plaintiff's contentions that the Defendants used excessive force and/or failed to intervene are "so utterly discredited by the record that no reasonable jury could have believed him." Scott, 550 U.S. at 380.

21

Accordingly, the Defendants are entitled to judgment as a matter of law on the Plaintiff's excessive force and failure to intervene claims.

The Court concludes, after carefully reviewing the Plaintiff's allegations and the parties' forecasts of evidence, that these claims are frivolous and malicious. See 28 U.S.C. §§ 1915(e)(2)(B)(i), 1915A(b)(1).

### 2. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because the Plaintiff has not presented a forecast of evidence that the Defendants violated a constitutional right, the Defendants are also entitled to summary judgment on the grounds of qualified immunity. Therefore, the Court grants summary judgment for the Defendants on this ground as well.

**B.    Plaintiff's Motion for Summary Judgment**

In his Motion for Summary Judgment, the Plaintiff reiterates his arguments that the Plaintiffs used "extreme excessive force" and that he was severely injured as a result of their actions.  [Doc. 59 at 3].  He argues that the Defendants' credibility is in question because their BWCs were turned off during the incident, and that he has submitted proof that demonstrates the existence of a factual dispute that should be resolved by a jury.  [Id. at 3, 6]. He has attached evidence, including the ambulance, hospital, and radiology bills, a mugshot of himself wearing a neck brace, and a case summary showing the dismissal of a Mecklenburg County cocaine charge.  [Id. at 10-29].

As previously discussed, the objective evidence establishes that no excessive force or failure to intervene occurred, and the Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact for trial. Therefore, the Plaintiff's Motion for Summary Judgment is denied.

## IV.  CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment, denies the Plaintiff's Motion for Summary Judgment, denies the pending Motion for Extension of Time as moot, and finds the Plaintiff's claims to be frivolous and malicious.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1.  Defendants' Motion for Summary Judgment [Doc. 57] is **GRANTED,** and this action is **DISMISSED WITH PREJUDICE**.

2.  The Court finds that the Plaintiff's claim is frivolous and malicious pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A.

3.  The Plaintiff's Motion for Summary Judgment [Doc. 59] is **DISMISSED and DENIED**.

4.  The Plaintiff's Motion to Extend Time of Dispositive Motions [Doc. 60] is **DENIED AS MOOT**.

The Clerk is respectfully directed to substitute "FNU Banham," "FNU Burch," "J.C. Moore," and "FNU Zederbaum with Phillip Banham, Jerry Burch, Jarrid Moore, and Jeffrey Zederbaum, respectively, mail the Plaintiff a copy of this Order, and terminate this action.

**IT IS SO ORDERED.**

Signed: September 6, 2022

Martin Reidinger
Chief United States District Judge